Raymond D. Powers
ISB #2737; rdp@powerstolman.com
Mark J. Orler
ISB #7476; mjo@powerstolman.com
POWERS TOLMAN FARLEY, PLLC
702 West Idaho, Suite 700
Boise, ID 83702
Post Office Box 9756
Boise, ID  83707
Telephone: (208) 577-5100
Facsimile: (208) 577-5101
W:\10\10-191\Motions\MTD\Memo.docx

Attorneys for Defendant The Corvallis Clinic, P.C.

IN THE UNITED STATES DISTRICT

COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SAINT ALPHONSUS REGIONAL MEDICAL CENTER, INC., an Idaho non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>THE CORVALLIS CLINIC, P.C., an Oregon professional corporation, and HEALTHCARE MANAGEMENT ADMINISTRATORS, INC., a Delaware corporation; and DOES 1 THROUGH 25, INCLUSIVE,<br><br>Defendants. | Case No.: 1:18-CV-00242-EJL<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT THE CORVALLIS CLINIC, P.C.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

**COMES NOW** Defendant, The Corvallis Clinic ("TCC"), by and through its undersigned counsel of record, and respectfully states as follows in support of its motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2):

MEMORANDUM IN SUPPORT OF DEFENDANT THE CORVALLIS CLINIC, P.C.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION - 1

## I.  INTRODUCTION

Plaintiff Saint Alphonsus Regional Medical Center's ("SARMC") assertion of personal jurisdiction over TCC is supported only by vague reference to TCC "transact[ing] business in the State of Idaho" and for "violations . . . [that] have been and are being carried out in the State of Idaho," as well as alleged telephone calls with and bill submissions to "Defendants" (TCC and Healthcare Management Administrators, Inc. ("HMA")) without specifics as to each defendant's involvement.  (Dkt. 1, Ex. A.)  Rather the Complaint merely lumps the defendants together throughout.  As established herein, SARMC has no basis for suing TCC in Idaho.  TCC is not at home in Idaho, nor do the events of this case arise from any action undertaken by TCC in, or directed to, Idaho.  SARMC cannot prove that TCC reached out to Idaho and even if TCC did, the contact would be insufficient to establish personal jurisdiction.  Accordingly, this Court does not have personal jurisdiction over TCC and the Complaint should be dismissed against TCC.

## II.  STATEMENT OF RELEVANT FACTS

TCC is a professional corporation organized and existing pursuant to the laws of the State of Oregon and has its principal place of business in Corvallis, Benton County, Oregon.  (Dkt. 1, Ex. A at ¶ 2; Declaration of Sandra Speer in Support of Defendant The Corvallis Clinic, P.C.'s Motion to Dismiss for Lack of Personal Jurisdiction ("Speer Decl.") at ¶ 3.)  TCC is an independent, physician-led medical group serving the mid-Willamette Valley of Oregon and has more than 100 medical providers, board-certified in 27 specialties, offering comprehensive medical services to individuals and families in Benton, Linn and Lincoln Counties, Oregon.  (Speer Decl. ¶ 2.)

TCC's lack of Idaho contacts is conclusively established by the following:

- TCC does not offer medical services or conduct business operations in the State of Idaho;

- TCC does not conduct sales in the State of Idaho;

- TCC does not pay taxes to the State of Idaho;

- TCC does not conduct maintain any employees, offices, real estate, bank accounts or other property in the State of Idaho;

- TCC does not have any records in the State of Idaho;

- TCC does not solicit business in the State of Idaho;

- TCC is not licensed to conduct business in the State of Idaho;

- TCC does not have a registered agent for service in Idaho; and

- TCC does not solicit business from Saint Alphonsus Regional Medical Center.

(*Id*. at ¶¶ 4-12.)

On May 4, 2018, SARMC filed a complaint against TCC and HMA in the District Court of the Fourth Judicial District for the State of Idaho, in and for the County of Ada (Case No. CV01-18-08381). HMA filed a Notice of Removal on May 31, 2018.[1] (Dkt. 1.) SARMC's Complaint alleges that it provided healthcare services to "Patient T.B." who was a member of a health plan organized by defendants. (Dkt. 1, Ex. A at ¶ 8.) Specifically, SARMC alleges that "Patient T.B. presented to the emergency room of Saint Alphonsus" on or about September 6, 2015; that SARMC rendered emergency trauma care and other medically necessary services, supplies and/or equipment to "Patient T.B."; that SARMC timely and properly billed defendants for the same; and defendants have failed to pay. (*Id*. at ¶¶ 10, 12, 15 and 16.) SARMC asserts three causes of action against defendants: (1) breach of oral contract; (2) breach of implied-in-fact contract; and (3) quantum meruit.

---

[1] TCC consented to the removal.

MEMORANDUM IN SUPPORT OF DEFENDANT THE CORVALLIS CLINIC, P.C.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION - 3

TCC has established a self-funded employee benefit plan ("the TCC Plan"), providing, among other things, health coverage to its eligible employees and their dependents. (Speer Decl. ¶ 13.) TCC executed an Administrative Services Agreement with HMA by which HMA assumed certain duties, including claims processing services, as the third-party administrator for the TCC Plan. (Speer Decl. ¶ 14.) The Complaint does not assert separate factual allegations against TCC or HMA. Rather, SARMC simply lumps the two defendants together throughout the Complaint, including when referencing the alleged telephone communication on September 11, 2015 and September 15, 2015. The following two paragraphs illustrate this point:

> 11. On or about September 11, 2015, Saint Alphonsus called and spoke with a representative of Defendants who verified that Patient T.B. was enrolled in Defendant's health plan. Saint Alphonsus notified Defendants of Patient T.B.'s inpatient admission and obtained the treatment authorization number 257033 from Defendants. The authorization was for the medically necessary services, supplies, and/or equipment for inpatient level care.
>
> 13. As noted above, on paragraph 10, Saint Alphonsus was not able to obtain the insurance information until four days after admission. On or about September 15, 2015, a representative from Defendants called Saint Alphonsus requesting clinical documents for Patient T.B. She advised that the late notification was waived or excused because it was due to the patient's condition.

(Dkt. 1, Ex. A at ¶¶ 11, 13.) These two paragraphs contain the sum of any communication allegedly occurring between SARMC and defendants. Setting the generic pleading aside, TCC maintains it did not have any communication with SARMC in September 2015 regarding verification of coverage or authorization of treatment for a TCC Plan member as alleged in the Complaint. (Speer Decl. ¶¶ 15, 16; Declaration of Penny Jones in Support of Defendant The Corvallis Clinic, P.C.'s Motion to Dismiss for Lack of Personal Jurisdiction at ¶ 2.) TCC also maintains it did not call Saint Alphonsus Regional Medical Center in September 2015 requesting "clinical documents" for a TCC Plan member as alleged in the Complaint. (*Id.*)

### III.  ARGUMENT

Motions to dismiss for lack of personal jurisdiction made pursuant to Federal Rule of Civil Procedure 12(b)(2) "are speaking motions and it is appropriate to look beyond the pleadings to affidavits and other evidence when considering them." *National Union Fire Ins. Co. of Pittsburgh v. Aerohawk Aviation, Inc.*, 259 F. Supp. 2d 1096, 1101 (D. Idaho 2003) (citation omitted).  As the plaintiff, SARMC bears the burden of establishing that this Court has personal jurisdiction over TCC.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 104 (1998); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citation omitted).  To overcome a motion to dismiss for lack of personal jurisdiction, SARMC must make a prima facie showing that TCC is subject to personal jurisdiction in Idaho.  *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1392 (9th Cir. 1986).  As established herein, SARMC cannot satisfy that requirement.

**A.      This Court Lacks Personal Jurisdiction Over Defendant TCC.**

Because no applicable federal statute governing personal jurisdiction exists, the district court must apply the laws of the state in which the district court sits.  *Schwarzenegger*, 374 F.3d at 800.  There are two limits on a court's power to exercise personal jurisdiction over a nonresident defendant:  (1) the state's longarm statute and the Due Process Clause of the Fourteenth Amendment.  *See Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).  Idaho's long-arm statute is coextensive with the limits of due process; therefore, the Court need only consider whether the constitutional standard is met in this case.  *Schwarzenegger*, 374 F.3d at 800-01; *SpeedConnect LLC v. Idaho Falls Wireless P'ship*, 960 F. Supp. 2d 1114, 1120 (D. Idaho 2013).

The Due Process Clause of the Fourteenth Amendment allows the Court to exercise personal jurisdiction over TCC if it has "certain minimum contacts with [Idaho] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The "minimum contacts" requirement

can be satisfied in one of two ways: general jurisdiction or specific jurisdiction. General jurisdiction permits a lawsuit within the forum regarding dealings that have no relationship to the forum, and specific jurisdiction permits a lawsuit within the forum where the suit arises out of the defendant's contacts with the forum. *Id*. at 317-18. Here, SARMC cannot make a prima facie showing of either general or specific jurisdiction. TCC has no contacts with the State of Idaho, let alone contacts sufficient for this Court to exercise personal jurisdiction over it. Consequently, this case must be dismissed against TCC.

### 1. General Personal Jurisdiction Over TCC Is Not Appropriate Because TCC Is Not "At Home" In Idaho.

Although SARMC does not identify whether its theory of personal jurisdiction is rooted in general or specific jurisdiction, the Complaint is void of any allegations that would support a theory of general personal jurisdiction over TCC. For general jurisdiction to exist, TCC must engage in "continuous and systematic general business contacts" that "approximate physical presence" in Idaho. *Schwarzenegger*, 374 F.3d at 801 (citations omitted). These contacts must be so pervasive as to render a defendant "essentially at home" in Idaho. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014). This standard is not easily met. *Id*. For an entity like TCC, general jurisdiction is typically limited to the state of incorporation or the state where the company maintains its principal place of business. *Id*.

It is undisputed that TCC is an Oregon company with its principal place of business in Oregon. (Dkt. 1, Ex. A at ¶ 2; Speer Decl. ¶ 3.) TCC does not conduct business operations in Idaho; does not maintain any employees, offices, real estate, bank accounts or other property in Idaho; does not solicit business in Idaho; is not licensed to conduct business in Idaho; and does not have a registered agent for service in Idaho. (Speer Decl. at ¶¶ 4-11.) TCC simply has no contacts with Idaho, let alone "continuous and systematic" contacts with Idaho that are so pervasive as to

render TCC "at home" in this forum. Indeed, SARMC readily admits that TCC is organized under the laws of Oregon and that its principal place of business is in Corvallis, Oregon. (Dkt. 1, Ex. A at ¶ 2.) SARMC failed to even plead facts suggesting that TCC could be subject to general jurisdiction in Idaho. Therefore, SARMC cannot meet the exacting standard of establishing general personal jurisdiction over TCC in Idaho.

### 2. SARMC Cannot Establish Specific Personal Jurisdiction Over TCC.

Likewise, specific jurisdiction is also lacking over TCC. Specific jurisdiction applies only where "the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The Ninth Circuit uses a three-prong test to determine when specific jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205-06 (9th Cir. 2006). SARMC bears the burden of satisfying the first two prongs of the test. *Schwarzenegger*, 374 F.3d at 802. If SARMC fails to satisfy either prong, specific jurisdiction is not established. *Id*. If SARMC satisfies both prongs, the burden then shifts to TCC to show that the exercise of jurisdiction would be unreasonable. *Id*. SARMC cannot satisfy the first two prongs. Even if it could, exercising personal jurisdiction over TCC would not be fair or reasonable.

### a) **TCC has not purposefully availed itself of the privilege of doing business in Idaho.**

As to the first factor, TCC did not purposefully avail itself of this forum's benefits. The first requirement of "purposeful availment" ensures that a defendant is not haled into court because of random, fortuitous, or attenuated contacts or on account of the unilateral activity of third parties. *Wayne Enterprises, LLC v. McGhee*, 2016 WL 3620731, at *4 (D. Idaho June 28, 2016) (citation omitted). "[T]he mere 'unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.'" *Hunt v. Erie Ins. Group*, 728 F.2d 1244, 1248 (9th Cir. 1984) (quotation omitted). The Ninth Circuit typically applies a purposeful availment analysis to suits sounding in contract. *See Yahoo!*, 433 F.3d at 1205. The claims asserted in SARMC's Complaint sound in contract (breach of oral contract, breach of implied-in-fact contract and quantum meruit). A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there. *Schwarzenegger*, 374 F.3d at 802.

SARMC's causes of action against TCC arise from SARMC allegedly reaching out to either TCC or HMA by phone on September 11, 2015 (again, SARMC does not identify which entity it allegedly contacted on September 11, 2015) and arise from what TCC or HMA allegedly did not do: alleged failure to pay SARMC "the full amount owed." (Dkt. 1, Ex. A at ¶ 16.) But not completing some act in a forum is not purposeful availment of that forum. *See Hirsch v. Blue Cross, Blue Shield of Kan. City*, 800 F.2d 1474, 1478 (9th Cir. 1986) (the "purposeful availment prong is satisfied when a defendant takes deliberate actions within the forum state . . .") A phone call directed from Idaho to Oregon does not make TCC subject to suit in Idaho. *See Burger King*, 471 U.S. at 475 (specific jurisdiction must "result from actions by the defendant *himself*")

(emphasis in original). Moreover, ordinarily "use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state." *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985). And while SARMC alleges that on September 15, 2015, "a representative from Defendants called Saint Alphonsus requesting clinical documents," SARMC does not identify whether TCC or HMA made the call.[2] TCC did not do so. (Speer Decl. ¶¶ 15, 16; Jones Decl. ¶ 2.)

Regardless, "[t]he weight of authority . . . holds that an out-of-state insurer does not subject itself to personal jurisdiction in a forum state by verifying coverage for treatment of the insured in that state and paying some of the bills for that treatment." *St. Luke's Episcopal Hosp. v. La. Health Serv. & Indem. Co.*, 2009 WL 47125, at *5 (S.D. Tex. Jan. 6, 2009); *see also Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364 (5th Cir. 2010) (no personal jurisdiction over an out-of-state ERISA plan claims administrator); *Puget Sound Surgical Center, P.S. v. Aetna Life Ins. Co.*, 2018 WL 1172992, at *6 (W.D. Wash. Mar. 6, 2018) (concluding plaintiff failed to meet its burden of establishing the first prong of the test for specific personal jurisdiction because defendant did not direct any action within Washington or take steps to invoke the benefits and protections of Washington's laws); *Whittaker v. Med. Mut. of Ohio*, 96 F. Supp. 2d 1197, 1200 (D. Kan. 2000) (no personal jurisdiction over an out-of-state insurer); *Bayada Nurses, Inc. v. Blue Cross and Blue Shield of Michigan*, 2008 WL 2945388, at * 1 (E.D. Pa. July 30, 2008) (finding telephone calls and payments did not establish specific personal jurisdiction in Pennsylvania).

In *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364 (5th Cir. 2010), the insureds obtained medical services from a medical provider in Louisiana. *Id*. at 367.

---

[2] *See Cascades Computer Innovation LLC v. RPX Corp.*, 2013 WL 316023, *6 (N.D. Cal. Jan. 24, 2013) stating: "This is the sort of generic pleading—alleging misconduct against various defendants without specifics as to the role each played—that was rejected by *Twombly*: . . . [T]he complaint here furnishes no clue as to which of the [defendants] (much less which of their employees) supposedly agreed . . .").

The defendant insurer issued policies in multiple states, but none in Louisiana. *Id*. at 366. The insurer, however, had paid a limited number of claims to the medical provider in Louisiana. *Id*. at 367. After the insurer denied full payment for a Louisiana medical provider's services, the medical provider brought suit in Louisiana. *Id*. The Fifth Circuit held that the district court in Louisiana did not have specific personal jurisdiction over the defendant insurer stating:

> [The insurer's] payment of a limited number of claims for treatment of [the insurer's] insured, based on the unilateral decision of those insureds who sought treatment in Louisiana, does not establish purposeful contact between the individual [insurer] defendants and the State of Louisiana . . . [The insurer] made the payments because its insureds independently and without encouragement from [the insurer] presented to a Louisiana hospital . . .

*Id*. at 369-70.

Recently, in *Puget Sound Surgical Center, P.S. v. Aetna Life Ins. Co.*, 2018 WL 1172992 (W.D. Wash. Mar. 6, 2018), the district court concluded that it lacked personal jurisdiction over defendant Anchorage School District Active Employee Open Choice PPO Plan ("defendant Anchorage") because the plaintiff, Puget Sound Surgical Center, P.S., "failed to meet its burden of establishing the first prong of the test for specific personal jurisdiction because [defendant Anchorage] did not direct any action within Washington or take any steps to invoke the benefits and protections of Washington's laws." *Id*. at *6. As in *Choice Healthcare,* the district court also found it significant that the patient independently selected Puget Sound as a healthcare provider and that, in turn, did not demonstrate that defendant Anchorage purposefully availed itself of the privilege of conducting business in Washington. *Id*.

Likewise, in *Whittaker v. Med. Mut. of Ohio*, 96 F. Supp. 2d 1197 (D. Kan. 2000), the district court concluded that it lacked personal jurisdiction over an Ohio insurer of a patient who had moved to Kansas to seek medical treatment. The Ohio insurer allegedly told the insured that the treatment would be covered under the insurer's plan. The insurer paid the patient's Kansas

hospital bills for a year but stopped paying after determining that under Ohio law, the insured's treatments were no longer medically necessary. *Id*. at 1199. The insured sued to challenge the insurer's determination. The Kansas district court rejected the insured's argument that the Ohio insurer's assurance of coverage, payment of some of the Kansas medical bills, and sending notice of nonpayment to Kansas established minimum contacts in Kansas. *Id*. at 1200. The district court also rejected the argument that the fact that the insurer told the insured that treatment in Kansas would be covered supported personal jurisdiction in Kansas:

> As to the first contact, [the insurer] is obligated to carry out its insurance contracts no matter in which state treatment is sought. Therefore, the fact that Medical Mutual acknowledged its obligation to pay under the insurance plan if plaintiff sought treatment in Kansas is not purposeful availment.

*Id*.

In fact, the Idaho Supreme Court ruled against SARMC in another case involving lack of personal jurisdiction in *Saint Alphonsus Regional Medical Center v. Washington*, 123 Idaho 739, 852 P.2d 491 (1993). In that case, SARMC provided medical services to individuals eligible for benefits under Washington's worker's compensation laws. The defendant, State of Washington, did not maintain any office outside of Washington and its actual contacts with Idaho were limited to: (1) reimbursing SARMC for medical bills submitted to the Washington State Department of Labor and Industry in Olympia, Washington; (2) sending a provider application to SARMC; (3) issuing a provider number to SARMC; and (4) informing SARMC of changes in Washington's worker's compensation rules. The Idaho Supreme Court determined that the minimum contacts standard was not met because Washington had not "purposefully [availed] itself of the privilege of conducting activities in [Idaho], thus invoking the benefits and protections of [Idaho's] laws." *Id*. at 744-45, 852 P.2d at 496-97. Similar to *Choice Healthcare*, *Puget Sound* and *Whittaker*, the Idaho Supreme Court found it notable that "Washington's involvement with Idaho in the instant

MEMORANDUM IN SUPPORT OF DEFENDANT THE CORVALLIS CLINIC, P.C.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION - 11

case was a function of the unilateral decision of some Washington workers to move or seek medical care out of state . . . Washington neither instigated nor attempted to foster its relationship with St. Alphonsus." *Id*. at 745, 852 P.2d at 497.

This analysis is also consistent with the Ninth Circuit's decision in *Hunt v. Erie Ins. Group*, 728 F.2d 1244 (9th Cir. 1984). In that case, an East Coast insurer provided automobile insurance payments to the plaintiff, a resident of Pennsylvania involved in a car accident in Colorado, as a third-party beneficiary of the policy. *Id*. at 1245. After initially being treated in Colorado, the plaintiff sought medical treatment from a specialist in California and made a claim for coverage under the policy. *Id*. When the insurer paid out some, but not all, of the plaintiff's claims, the plaintiff filed suit in California. *Id*. at 1246. The insurer moved to dismiss for lack of personal jurisdiction. *Id*. The insurer argued that although it covered residents in a handful of states, it was not registered to do business in California and conducted no business with any California residents. *Id*. Despite these scant contacts, the plaintiff argued that jurisdiction over the insurer was appropriate because the insurer purposefully availed itself of California by mailing payments to California and by committing a tort in California in failing to pay the plaintiff's claims in full. *Id*. The Ninth Circuit rejected this argument, stating:

> The mere fact that [the insurer] communicated with [the plaintiff] in the state, and may have committed a tort in the exchange of correspondence, does not show that [the insurer] purposefully availed itself of the privilege of conducting business in California. [The plaintiff's] move to California forced [the insurer] to send mail to that State concerning her claim.

*Id*. at 1248.

Here, SARMC cannot establish personal jurisdiction over TCC because TCC had not taken any action within Idaho. TCC did not have any communication with SARMC in September 2015 regarding verification of coverage or authorization of treatment for a TCC Plan member as alleged in the Complaint. (Speer Decl. ¶¶ 15, 16; Jones Decl. ¶ 2.) TCC also did not call SARMC in

September 2015 requesting "clinical documents" for a TCC Plan member as alleged in the Complaint. (*Id*.) TCC did not direct any of its plan members to seek or receive medical services from any particular healthcare provider in the State of Idaho, be it SARMC or any other entity or medical provider located in Idaho. (Speer Decl. ¶ 17.) The fact a TCC Plan member may have been treated at SARMC does not give rise to purposeful availment necessary to establish personal jurisdiction against TCC in Idaho. TCC could not have reasonably anticipated being haled into an Idaho court based on its lack of contacts with Idaho. Instead, SARMC is inappropriately attempting to satisfy personal jurisdiction based upon the unilateral conduct of others: a TCC Plan member seeking treatment in Idaho and SARMC's efforts to seek insurance information and payment. "The due process clause protects a defendant's right to receive fair warning that his actions might subject him to suit in a given jurisdiction. This safeguard allows him to structure his conduct with a degree of assurance as to what will flow from his conduct." *Hirsch*, 800 F.2d at 1478 (citation omitted). As such, SARMC cannot demonstrate that TCC purposefully availed itself of the privilege of conducting business in Idaho.

### b) SARMC cannot establish that TCC's alleged "contacts" are the "but for cause" giving rise to the causes of action asserted in the Complaint.

SARMC is also unable to satisfy the second prong for specific personal jurisdiction—that the causes of action asserted in the Complaint are related to TCC's in-forum contacts. Under this prong, the Court must determine whether the claims made against TCC arise out of the Idaho related contacts. *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 864 (9th Cir. 2003). This prong ensures that the nonresident defendant will not be subject to personal jurisdiction based on wholly unrelated contacts with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 426 (1984).

To determine the second prong, the Ninth Circuit has adopted the "but for" test. *Mattel*, 354 F.3d at 864. The question can be formulated as this: but for TCC's contacts with Idaho, would SARMC's claims have arisen? *See id*. Moreover, mere injury in the forum does not satisfy this factor because the "proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014).

Here, SARMC cannot point to any TCC contact within Idaho giving rise to its claims. Even if SARMC can prove it communicated with TCC in September 2015 (which it cannot), the nature of the contacts is insufficient to establish personal jurisdiction.

        **c)** **Even if SARMC could meet the first two prongs (which it cannot), exercising personal jurisdiction over TCC would not "comport with fair play and substantial justice" as required by the third prong.**

Even if SARMC could meet the first two elements to meet its burden, exercising specific jurisdiction over TCC would not "comport with fair play and substantial justice" as the third prong of the specific personal jurisdiction test requires. *See Burger King*, 471 U.S. at 476 (internal quotation marks omitted). For this prong, a court considers seven factors: (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000).

These factors either weigh against exercising personal jurisdiction over TCC in Idaho or are simply not applicable. TCC has not purposefully interjected itself into Idaho's affairs. "The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less

reasonable is its exercise." *Ins. Co. of N. Am. v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981). Defending this case in Idaho will impose a significant burden on TCC because its principal place of business is in Oregon and it does not have any offices, employees, records, or contacts in Idaho. The remaining factors are largely neutral or non-existent in this case.

### IV. CONCLUSION

For the foregoing reasons, TCC respectfully requests this Court grant its Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

DATED this 7th day of June, 2018.

        POWERS TOLMAN FARLEY, PLLC

        By /s/ *Mark J. Orler*
           Raymond D. Powers - Of the Firm
           Mark J. Orler - Of the Firm
           *Attorneys for Defendant The Corvallis Clinic, P.C.*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 7th day of June, 2018, I caused to be served a true copy of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT THE CORVALLIS CLINIC, P.C.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**, electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Barry Sullivan, bsullivan@sacfirm.com
Jin Hee Park, jhpark@sacfirm.com
*Attorneys for Plaintiff*

Steven D. Robinson, sdrobinson@carrtuttle.com
*Attorneys for Defendant Healthcare Management Administrators, Inc.*

        /s/ *Mark J. Orler*
        Raymond D. Powers
        Mark J. Orler